**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KAREN O'CONNER** | **CIVIL ACTION** |
| **v.** | **NO. 15-5051** |
| **THE PNC FINANCIAL SERVICES GROUP, INC. AND AFFILIATES LONG-TERM DISABILITY PLAN** | |

<u>**MEMORANDUM RE PLAINTIFF'S MOTION TO REMAND AND FOR LIMITED DISCOVERY**</u>

Baylson, J.                                                                                    May 20, 2016

As an employee at PNC Bank, National Association ("PNC"), plaintiff Karen O'Conner ("Ms. O'Conner") participated in the PNC Financial Services Group, Inc. and Affiliates Long-Term Disability Plan ("Defendant").  In 2014, Ms. O'Conner sought long-term disability ("LTD") benefits under the Plan due to Crohn's Disease, Diabetes, Hypertension, depression, and knee and back pain.  After conducting a thorough review of her medical history, which included reviews by five independent physicians, PNC's claim administrator, Liberty Life Assurance Company of Boston ("Liberty"), concluded that Ms. O'Conner was not disabled pursuant to the terms of the Plan.

After unsuccessfully appealing the decision to Liberty, Ms. O'Conner filed this lawsuit for a declaratory judgment pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA") by a beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of his plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C § 1132(a)(1)(B).

Presently before the Court is Ms. O'Conner's motion to remand her claim for LTD benefits, or, in the alternative, to augment the Administrative Record with discovery as to alleged conflicts of interest in the Plan. [1]

## II.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

Ms. O'Conner was employed as a Credit Analyst at PNC.  (ECF 22 (Administrative Record ("AR")) at 407).  Ms. O'Conner participated in the Plan, which is governed by ERISA. (AR 1372-73).  The Plan provides full-time, salaried employees who are out of work for longer than 91 days (the "Elimination Period") with LTD benefits of up to 60% of the employee's pre-disability compensation.[2]  (AR 1358).  The Plan is fully self-funded, as defined in ERISA.  (AR 1434).  Benefits pursuant to the Plan are paid out of a separate trust, the Group Benefits Trust ("GBT"), established by PNC solely for that purpose.  (Id.).  PNC makes fixed contributions to the GBT based on actuarial calculations.  (Id.).  PNC holds no residual interest in the assets of the GBT, and GBT assets are used exclusively to provide benefits of participants or beneficiaries in the Plan.  (Id.).

Defendant is both Plan Sponsor and Plan Administrator under the Plan.  (AR 1372).  The terms of the Plan provide that the Plan Administrator has the authority to control and manage the operation and administration of the Plan, and that its duties may be delegated to a claims administrator.  (AR 1368).  Pursuant to this authority, PNC entered into an Administrative Services Only Agreement ("ASOA") with Liberty.  (AR 1411-31).  Pursuant to the ASOA, Liberty is vested with discretionary authority to construe the Plan in its processing, reviewing and administering of claims for LTD benefits.  (AR 1422).  The Plan provides that court review of decisions is limited to whether the decision was arbitrary and capricious.  (AR 1368).

---

[1]     For ease of reference, the LTD Benefits Summary Plan Description (AR 1353-73) will hereinafter be referred to as the "Plan."
[2]     Up to 70% with employee contribution.  (AR 1358).

In order to qualify for LTD benefits under the Plan, an employee must demonstrate that she is disabled, which means that, for the first 24 months of her disability, she is "unable to perform the material or essential duties of [her] own occupation as it is normally performed in the national economy." (AR 1357).  LTD benefits may be denied where the claimant fails to submit proof of disability upon request. (AR 1364).  And, as a condition under the Plan, a claimant "may be required to submit whatever proof the Plan Administrator may require (either directly to the Plan Administrator or to any person delegated by it)." (AR 1371).

Ms. O'Conner's disability occurred on April 26, 2014, and as such her LTD Elimination Period was satisfied on July 25, 2014. (AR 44).  In order to evaluate Ms. O'Conner's claim for LTD benefits, Liberty sent letters to physicians with whom she met regarding her symptoms: Dr. Linda Good, Ms. O'Conner's primary care physician (AR 49-50), and Dr. Michael Cavanaugh, orthopaedic specialist (AR 52-53).  Liberty asked these physicians to submit Ms. O'Conner's medical records for purposes of evaluating her LTD eligibility. (AR 49-53).  Liberty also sent a letter to Ms. O'Conner, requesting that she provide all medical information necessary to evaluate her eligibility and to demonstrate that she suffers from a disability as defined in the Plan. (AR 56-57).  In this letter, Liberty informed Ms. O'Conner that if the requested information was not provided it would make an eligibility determination based on the information available in its file. (AR 57).

By letter dated December 30, 2014, Liberty informed Ms. O'Conner that she was not entitled to LTD benefits under the Plan. (AR 418-22).  Liberty indicated that it considered medical documentation submitted in support of the claim from: Dr. Good, family practice; Dr. Cavanaugh, orthopaedics; Dr. Marie Bailey, gastrology; Dr. Michael Franklin, rheumatology; Dr. Gregory Pharo, pain management; and Carol Campbell, licensed clinical social worker. (AR

419-20).  The letter stated that, "[b]ased on the available medical information, independent physician reviews and vocational review, occupational impairment from any condition is not supported.  Thus, you do not meet your Plan's definition of disability, and we must deny your claim."  (AR 421).

On June 1, 2015, Ms. O'Conner appealed Liberty's denial of her request for benefits. (AR 406-16).  In a August 30, 2015 letter to Ms. O'Conner's counsel, Liberty summarized the information in the appeal file and stated its decision to uphold the denial of Ms. O'Conner's LTD benefits.  (AR 1334-42).  The letter stated that Liberty "conclude[s], based on a review of all of the medical documentation contained [in] Karen O'Conner's disability claim file, there is insufficient medical and psychiatric evidence to establish that Ms. O'Conner's conditions are of a nature and severity that prevent Ms. O'Conner from performing the material and substantial duties of her . . . occupation."  (AR 1341).  "Therefore," Liberty determined, "Ms. O'Conner did not meet the definition of disability, as defined in [the Plan], throughout the Elimination Period and continuously thereafter, and no benefits will be paid."  (Id.).

Ms. O'Conner filed this lawsuit on September 8, 2015 against Liberty.  (ECF 1).  On November 11, 2016, Ms. O'Conner filed her Amended Complaint, naming the Plan as the only defendant.  (ECF 6 ("Am. Compl.")).  Ms. O'Conner's only claim for relief is a declaratory judgment specifying, among other things, that she is disabled as defined in the Plan, and that Defendant is obligated to pay continuing LTD benefits pursuant to the Plan, plus interest.  (Am. Compl. 6-7).  On March 16, 2016, this Court ordered that the parties submit briefing on (1) whether the case should be remanded to the Plan Administrator in light of Ms. O'Conner's expected award of Social Security Disability Insurance ("SSDI") benefits, and (2) if limited discovery into the Plan's structural conflict and alleged procedural abnormalities.  (ECF 19).

4

Ms. O'Conner filed her brief in support of remand and limited discovery on March 30, 2016. (ECF 21 ("Pl.'s Br.")).  The Plan filed the Administrative Record on April 6, 2016.  (ECF 22). On April 6, 2016, the Plan submitted its brief in opposition to remand and limited discovery. (ECF 23 ("Def.'s Br.")).

## II.  LEGAL STANDARDS

### A.  Applicable Standard of Review

For actions brought under 29 U.S.C. § 1132(a)(1)(B), such as the instant case, the standard of review a trial court must apply was established in Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).  In Firestone, the United States Supreme Court held "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Id. at 115.  When the administrator has discretionary authority to determine eligibility for benefits, the decision must be reviewed under an arbitrary and capricious standard.  Id.

The Third Circuit has recently reiterated that, "[u]nder a traditional arbitrary and capricious review, a court can overturn the decision of the plan administrator only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law."  Doroshow v. Hartford Life & Accident Ins. Co., 574 F.3d 230, 234 (3d Cir. 2009).  Furthermore, "[t]he scope of this review is narrow, and 'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'"  Id. (quoting Abnathya v. Hoffmann-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)).  Finally, when deciding whether an administrator's determination is without reason, unsupported by the evidence, or erroneous as a matter of law, courts must "apply the following rules of construction of contracts to ERISA plans: the plan

must be considered as a whole; straightforward, unambiguous language should be given its natural meaning; and, if a specific provision found in the plan conflicts with a general provision, the specific provision should control." <u>Saltzman v. Independence Blue Cross</u>, 384 Fed. App'x 107, 114 (3d Cir. 2010).

Where a plaintiff, as here, alleges a conflict of interest, "if a benefit plan gives discretion to an administrator or a fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" <u>Firestone</u>, 489 U.S. at 115 (quoting Restatement (Second) of Trusts § 187, Comment *d* (1959) (alteration in original)). But, a conflict of interest review does not require a heightened arbitrary and capricious standard of review. <u>Metropolitan Life Ins. v. Glenn</u>, 554 U.S. 105, 117-18 (2008); <u>accord</u> <u>Doroshow</u>, 574 F.3d at 234.

**B. Scope of Discovery in ERISA Cases**

Federal courts have broad discretion to manage discovery, <u>Sempier v. Johnson</u>, 45 F.3d 724, 737 (3d Cir. 1995), and it is well-recognized that the Federal Rules of Civil Procedure permit broad and liberal discovery, <u>Pacitti by Pacitti v. Macy's</u>, 193 F.3d 766, 777 (3d Cir. 1999). The Rules allow parties to obtain discovery regarding "any matter, not privileged, that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). However, in the ERISA context, the usual broad scope of discovery is limited by the statute's goal of a speedy, efficient resolution of claims. <u>Sivalingum v. Unum Provident Corp.</u>, 735 F. Supp. 2d 189, 196 (E.D. Pa. 2010). Moreover, the standard of review applied in an ERISA denial of benefits case bears significantly on the scope of discovery permitted. <u>See, e.g.</u>, <u>Moran v. Life Ins. Co. of N. Am.</u> <u>Misericordia Univ.</u>, No. 13-756, 2014 WL 4251604, at *3 (M.D. Pa. Aug. 27, 2-14); <u>Aquilino v.</u>

Hartford Life & Accident Ins. Co., No. 10-2044, 2010 WL 3505172, at * (E.D. Pa. Aug. 31, 2010).

As noted, pursuant to ERISA, a person denied benefits under an employee benefit plan may challenge that denial in federal court. 29 U.S.C. § 1132(a)(1)(B). "Ordinarily, a court reviewing a plan administrator's decision to deny a benefits claim should apply a de novo standard of review." Firestone Tire & Rubber Co., 489 U.S. at 113. However, if the ERISA plan under consideration gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the reviewing court should apply an "arbitrary and capricious" standard. Id.; see also Miller v. Am. Airlines, Inc., 632 F.3d 837, 845 & n.2 (3d Cir. 2011).

Under de novo review, the reviewing court has discretion to consider supplemental evidence, even if it was not presented to the administrator. Viera v. Life Ins. Co. of N. Am, 642 F.3d 407, 418 (3d Cir. 2011); see also Lazlavic v. Principal Life Ins. Co., No. 11-684, 2013 WL 254450, at *9 (W.D. Pa. Jan. 23, 2013) ("[A] court reviewing a benefits decision de novo has discretion to consider 'any supplemental evidence' presented by the parties."). However, when courts apply an "arbitrary and capricious" standard of review, discovery is generally limited to the administrative record. Post v. Hartford Ins. Co., 501 F.3d 154, 168 (3d Cir. 2007). This principle arises from the rule that the district court's review of an administrator's decision is restricted to the "administrative record." The "administrative record" consists of the "evidence that was before the plan administrator when it made the decision being reviewed." Mitchell v. Deloitte & Touche Grp. Ins. Plan, 619 F.3d 1151, 1157 (3d Cir. 1997). This limited review comports with congressional intent by encouraging parties to resolve benefit claims internally and avoid the costs of litigation. See Grossmuller v. Int'l Union, 715 F.2d 853, 857 (3d Cir.

7

1983).  Furthermore, because ERISA claimants are required to exhaust their administrative remedies prior to filing suit, a full and complete administrative record is established and the need for discovery with respect to the merits of an administrator's decision to terminate benefits is eliminated.  See Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 249 (3d Cir. 2002).

Nonetheless, an ERISA claimant may be granted limited discovery beyond the administrative record if such discovery is "circumscribed" to conflicts of interest.  Sivalingum, 735 F. Supp. 2d at195-96.  Courts thus "review various procedural factors underlying the administrator's decision-making process, as well as structural concerns regarding how the particular ERISA plan was funded."  Miller v. American Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011).

The structural inquiry focuses on "the financial incentives created by the way the plan is organized."  Post, 501 F.3d at 162.  A structural conflict of interest can be created, for example, where the administrator both funds the plan and evaluates claims.  Glenn, 554 U.S. at 112. However, a conflict of interest is not present if an employer funds a benefits plan, but an independent third party is paid to administer the plan.  Pinto v. Reliance Std. Life Ins. Co., 214 F.3d 377, 383 (3d Cir. 2000).  And, if an employer establishes a plan and creates an internal benefits committee vested with the discretion to interpret the plan and administer benefits, a conflict of interest does not exist.  Id.; see also Post, 501 F.3d at 164 n.6.

On the other hand, the procedural inquiry focuses on "how the administrator treated the particular claimant."  Post, 501 F.3d at 162.  Procedural irregularities may include:

> [A] reversal of a benefits determination without additional
> evidence, (2) a disregard of opinions previously relied upon, (3) a
> self-serving selectivity in the use of evidence or reliance on self-
> serving paper reviews of medical files. (4) a reliance on the
> opinions of non-treating physicians over treating physicians
> without explanation, (5) a reliance on inadequate information or

incomplete investigation. (6) failure to comply with the notice
requirements of Section 504 of ERISA; (7) failure to analyze all
relevant diagnostics, and (8) failure to consider plaintiffs ability to
perform actual job requirements.

Greene v. Hartford Life and Accident Ins. Co., No. , 2015 WL 533257, at *3 (E.D. Pa. Feb. 6,

2015) (quoting Irgon v. Lincoln Nat. Life Ins. Co., No. 13-4731, 2013 WL 6054809, at *6

(D.N.J. Nov. 15, 2013)).  However, a "dispute with the merits of the decision, without evidence

of procedural bias or irregularity, does not suffice for the purpose of granting discovery." Id.

### III. Discussion

### A.  Standard of Review under ERISA

Preliminarily, this Court must decide what standard of review governs under ERISA.

Here, the plan documents state:

> The Plan Administrator shall have the authority to control and
> manage the operation and administration of the Plan.  The Plan
> Administrator shall have the exclusive discretionary authority to
> determine eligibility for benefits under the Plan, to construe the
> terms of the Plan and to determine any question which may arise in
> connection with its operation or administration, except to the
> extent that the Plan Administrator has authorized the claims
> administrator to make such determinations.

(AR 1368).  Because the Plan grants the Plan Administrator discretionary authority, an "arbitrary

and capricious" standard applies.  See Nally v. Life Ins. Co. of N. Am., 299 Fed. App'x 125,

127-129 (3d Cir. 2009) (finding delegation of discretionary authority and applying an arbitrary

and capricious standard of review where plan language granted "discretionary authority"); see

also Herbert v. PNC Fin. Servs. Grp., Inc., No. 14-4600, 2016 WL 465107, at *8 (E.D. Pa. Feb.

8, 2016) (noting, in identical plan, that parties "agree[d] that the abuse of discretion standard

govern[ed]").

**B.  Plaintiff's Request to Remand Case to Plan Administrator**

Ms. O'Conner seeks to remand her case back to Liberty in light of her being awarded

SSDI benefits.[3]  (Pl.'s Br. at 2).  The Third Circuit discussed remand to a plan administrator as a

remedy for a violation of the ERISA laws in <u>Miller v. American Airlines</u>, 632 F.3d 837, 856-57

(3d Cir. 2011):

> In deciding whether to remand to the plan administrator or
> reinstate benefits, we not that it is important to consider the status
> quo prior to the unlawful denial or termination.  As such, an
> important distinction emerges between an initial denial of beenfits
> and a termination of benefits after they were already awarded.  In
> situations where benefits are improperly denied at the outset, it is
> appropriate to remand to the administrator for a full consideration
> of whether the claimant is disabled.  To restore the status quo, the
> claimant would be entitled to have the plan administrator
> reevaluate the case using reasonable discretion.  In the termination
> context, however, a finding that a decision was arbitrary and
> capricious means that the administrator terminated the claimant's
> benefits unlawfully.  Accordingly, benefits should be reinstated to
> restore the status quo.

Thus, remand is appropriate where a court determines that denial of a claimant's LTD benefits

was arbitrary and capricious.  The proper procedural posture for such a determination is a motion

for summary judgment, a plaintiff's motion for judgment on the pleadings, or a defendant's

motion for judgment on the ERISA administrative record.  <u>See, e.g.</u>, <u>Haisley v. Sedgwick Claims</u>

<u>Mgmt. Servs., Inc.</u>, 776 F. Supp. 2d 33, 57 (W.D. Pa. 2011); <u>Goetz v. Greater Georgia Life Ins.</u>

<u>Co.</u>, 649 F. Supp. 2d 802, 826 (E.D. Tenn. 2009).  Ms. O'Conner has not provided, nor has this

Court been able to find, law permitted this Court to remand, at this point in the litigation, her

claim for LTD benefits.

---

[3]       Defendant counters, and Ms. O'Conner admits in her brief (Pl.'s Br. at 2), that Ms. O'Conner has yet to receive the award—Administrative Law Judge Schwarz "indicated he would grant" the SSDI benefits, and "[a] final written decision is forthcoming."  (<u>Id.</u>).  The Court finds this distinction irrelevant, as in either case remand is premature at this stage in the litigation.

Furthermore, Ms. O'Conner's reliance on <u>Jones v. Metro. Life Ins. Co.</u>, 2013 U.S. Dist. LEXIS 75397 (S.D. Tx. May 29, 2013), is misplaced.  In <u>Jones</u>, the plan administrator sent a letter to the claimant stating: "Please be advised, if additional medical information is submitted, by Dr. Uddin or any treating provider, in support of Mr. Jones functional limitations being related to his Coronary Artery Disease, we will be happy to review this information for consideration of benefits."  <u>Id.</u> at *4.  The <u>Jones</u> court acknowledged that "[r]emand is appropriate based on the unusual circumstances of this case.  What constitutes the administrative record for ERISA review purposes is a context-dependent question for this court."  <u>Id.</u> at *15.

Based on the circumstances presented in *this* case, remand is not appropriate at this time.[4] Liberty's denials did not provide, as in <u>Jones</u>, for the submission and consideration of additional evidence.  Furthermore, as the Third Circuit has recognized in a non-precedential, but persuasive, decision, a determination of "disability" by the Social Security Administration ("SSA") is not binding on the plan administrator where the administrator's decision is governed by the plan terms rather than the SSA statute, which is also the case here.  <u>Burk v. Broadspire Servs., Inc.</u>, 342 Fed. App'x 732, 783 (3d Cir. 2009).  For the foregoing reasons, the Court denies Ms. O'Conner's motion for remand.  If and when the SSA decision is issued, Ms. O'Conner may request whatever relief she believes is warranted.

## C.  Plaintiff's Request for Expanded Discovery as to Alleged Conflicts of Interest

In this case, Ms. O'Conner seeks discovery into the Plan Administrator's alleged structural and procedural conflicts of interest.  (Pl.'s Br. at 5).  Defendant disputes any conflict of interest, arguing that, because the Plan Administrator has delegated its authority to determine eligibility for LTD benefits under the Plan to Liberty, there is no structural conflict.  (Def.'s Br.

---

[4]      Again, the Court notes that this determination is based on the Court's reasoned analysis, the parties having briefed the issue, that such relief is premature *at this time*.  The Court makes no determination as to whether remand would be appropriate in connection with a motion for summary judgment.

at 17 (citing AR 1411-32)).  Furthermore, Defendant contends that Ms. O'Conner's allegations

of procedural abnormalities in the review and appeal of her claim amount to nothing more than

conclusory statements which do not rise to the level necessary to open the door to further

discovery.  (Def.'s Br. at 18-19).

1.   <u>Structural Conflict of Interest</u>

Here a conflict of interest exists because PNC both funds the Plan and serves as the Plan

Administrator.  <u>Glenn</u>, 554 U.S. at 114-15.  However, the significance of this conflict is

minimized, "to the vanishing point," <u>Glenn</u>, 554 U.S. at 117, under both Supreme Court and

Third Circuit precedent.  In <u>Post v. Hartford Insurance Co.</u>, 501 F.3d 154 (3d Cir. 2007), the

Third Circuit expressed "particular concern" about plans that are "funded on a case-by-case

basis" and plans that are "funded and administered by an outside insurer."  <u>Post</u>, 501 F.3d at 163.

Where an administrator "pays claims out of its operating budget" on a case-by-case basis "rather

than from segregated monies that the employer sets aside according to an actuarial

formula . . . each dollar paid out is a dollar out of the administrator's pocket," thereby giving the

administrator "a financial incentive to deny claims."  <u>Id.</u>  "This concern is compounded when it

is an outside insurer, rather than the employer, that funds and administers the plan," since an

employer which is "a step removed from the process" is not likely to suffer "the full effects of

employee dissatisfaction" resulting from poor claims handling.  <u>Id.</u> at 163-64.

Barbara L. Trant ("Ms. Trant"), Vice President, Manager of Disability Plans, with The

PNC Financial Services Group, declared that the Plan "is self-funded by means of a separate

trust established by PNC solely for the purpose of providing benefits," and that "[a] third party

does not insure the Plan."  (AR 1434).  Ms. Trant also provided that "PNC makes fixed, periodic

cash contributions to the [GBT] based on calculations and projections of its future long term

disability liability performed  by an independent actuary," and that "PNC holds no residual interest in the assets of the" GBT.  (AR 1434).  Accordingly, the specific concerns expressed by the Third Circuit in <u>Post</u> are not present here.[5]

Similarly, in <u>Glenn</u>, the Supreme Court observed that the significance of a conflict of interest would be minimal where a plan administrator "has taken active steps to reduce potential bias" and "promote accuracy . . . by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking from irrespective of whom the inaccuracy benefits." <u>Glenn</u>, 554 U.S. at 117.  Under the ASOA, PNC is responsible for establishing and maintaining the accounts for LTD benefits, while the third-party claims administrator, Liberty, "in no event shall . . . be liable for the payment of Plan benefits from its own funds."  (AR 1413).  Thus, "PNC has taken some steps to ensure that the administration of LTD claims is not influenced by collateral financial considerations."  <u>Haisley v. Sedgwick Claims Mgmt Servs., Inc.</u>, 776 F. Supp. 2d 33, 52 (W.D. Pa. 2011).

Furthermore, Ms. O'Conner's reliance on <u>Heim v. Life Insurance Co. of North America</u>, No. 10-1567, 2010 WL 5300537 (E.D. Pa. Dec. 22, 2010), is misplaced.  In <u>Heim</u>, the district court applied a de novo standard of review.  <u>Heim</u>, 2010 WL 5300537, at *2-3.  Under "de novo review over an ERISA determination between beneficiary claimants," the court "is not limited to" the administrative record.  <u>Id.</u> at *3.  Here, the Court has determined that the more stringent arbitrary and capricious standard applies.[6]  Because "[t]he scope of discovery in an ERISA case necessarily turns on the applicable standard of review employed by the courts," <u>Preitz v. Am. Airlines, Inc.</u>, No. 2015 WL 221065, at *2 (E.D. Pa. Jan. 15, 2015), <u>Heim</u> is inapposite.  In

---

[5]     The Court notes that in an identically structured plan, our sister court found no structural conflict of interest was present.  <u>Boby v. PNC Bank Corp. & Affiliates Long Term Disability Plan</u>, No. 11-848, 2012 WL 3886916, at *17 (W.D. Pa. Sept. 6, 2012).

[6]     The Court also notes, however, that Ms. O'Conner did not brief the issue of what standard of review applied.  Defendant asserts that the arbitrary and capricious standard of reviews applies in this case.  (Def.'s Br. 12).

addition, the plan at issue in <u>Heim</u> did not contain the structural safeguards that the Plan implemented by Defendant in this case utilizes. <u>Id.</u>

Finally, Ms. O'Conner's discovery requests as to the Plan's structural conflict of interest seek information that has already been disclosed in the Administrative Record. Ms. O'Conner states that answers are "necessary" for the following questions: (1) "how long Liberty has administered PNC's LTD plan"; (2) "whether Liberty is the sole administrator of the plan"; (3) "how much Liberty charges for this service and whether any incentives are included in its arrangement with PNC"; (4) "how often the Defendant uses the independent medical expert who reviewed Plaintiff's records"; and (5) "how much that medical expert is paid for each review and how many he/she does in a given week." (Pl.'s Br. at 5). Answers to questions (1) through (3) are readily available in the ASOA, which is included in the Administrative Record (1411-31). The ASOA was entered into between Liberty and PNC on March 1, 2011. (AR 1420). Annex C of the ASOA, which provides a schedule of charges under the Plan. (AR 1429-31). A letter Ms. Trant sent to Liberty indicates that PNC agreed to rate changes, and provides the newly agreed-to rates.[7] (AR 1432). Furthermore, Ms. O'Conner's inquiries as to the amount paid to the independent medical expert are not proper inquiries for a determination of conflict. This Court adopts the reasoning employed by our sister court, which stated:

> [I]t would be reasonable to assume that most, if not all, medical consultants and reviewers used by ERISA plan administrators, in this Circuit or otherwise, are paid for their services. Unless there is proof of *actual* impropriety, such as reviewers receiving financial incentives to specifically deny or delay claims . . . the mere fact that reviewers receive payment for their services is not enough to give rise to an inference of conflict.

---

[7]     Furthermore, as the Court has already noted, because only PNC is responsible for funding the Plan and the ASOA provides that Liberty is *not* financially responsible for any payment of LTD benefits, Liberty has no financial incentives in its arrangement with PNC to either grant or deny LTD benefits.

<u>Zurawel v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson</u>, No. 7-5973, 2010 WL 3862543, at *12 (D. N.J. Sept. 27, 2010) (citations omitted).

Similarly, the conflict of interest certification included in the form submitted by Liberty's independent medical reviewers includes an attestation that his or her "compensation for performing the subject review is not dependent, in any way, on the outcome of this case."  (<u>See, e.g.</u>, AR 272, 279; <u>see also</u> AR 388 ("I certify that I do not accept compensation for review activities that is dependent in any way on the specific outcome of the case.")).  Ms. O'Conner has not submitted any evidence contradicting or calling into doubt the veracity of these declarations.

Here, Ms. O'Conner is arguing that the Plan's structural conflict of interest entitles her to extra-record discovery.  However, in the Third Circuit a structural conflict of interest "does not give plaintiffs *carte blanche* to seek conflict of interest discovery beyond the Administrative Record."  <u>Irgon</u>, 2013 WL 6054809, at *5.  Rather, the plaintiff "must identify a reasonable suspicion that the conflict of interest somehow impacted [the defendant's] final decision of denial."  <u>Id.</u> at *6.  Where the plaintiff does "not articulate[] any additional bases for discovery," the discovery request is appropriately denied.  <u>Id.</u>  As Ms. O'Conner has failed to provide any basis for further discovery into the Plan's structural conflict of interest, her request for limited discovery on this basis is denied.

2.      <u>Procedural Conflict of Interest</u>

Ms. O'Conner also seeks limited discovery into the Plan's purported procedural conflict.  There is a lack of consensus in this jurisdiction as to whether determinations of structural conflicts of interest and procedural abnormalities in ERISA cases can be made by a review solely of the administrative record.  <u>Compare</u> <u>Felker v. USW Local 10-901</u>, No. 13-7101, 2015 WL

15

1867910, at * (E.D. Pa. Apr. 23, 2015) (stating the court did not "agree with the statements in [other district courts] that a structural conflict can be evaluated solely from documents in the administrative record"), with Shvartsman v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson, No. 11-3643, 2012 WL 2118126, at *11 (D. N.J. June 11, 2012) (stating "procedural irregularities are determined by a review of the administrative record").

However, the courts in this Circuit do agree that plaintiffs must "make a 'minimal showing of bias or irregularity that could have impacted the administration of the claim' to be permitted to conduct discovery into procedural conflicts." Felker, 2015 WL 1867910, at *9 (quoting Dandridge v. Raytheon Co., No. 8-4793, 2010 WL 376598, at *6 (D. N.J. Jan. 26, 2010)); see also Mainieri v. Bd. of Trustees of Operating Eng'rs Local 825 Pension Fund, No. 7-1133, 2008 WL 4224924, at *3 (D. N.J. Sept. 10, 2008) (stating that "a court must first assess whether a plaintiff has a good faith basis for alleging some conflict or bias, and then determine whether discovery would aid in evaluating the alleged bias") (quoting Delso v. Trustees of the Retirement Plan for the Hourly Employees of Merck & Co., Inc., No. 4-3009, 2006 WL 3000199, at *4 (D. N.J. Oct. 20, 2006)). Ms. O'Conner has failed to demonstrate this good faith basis.

Ms. O'Conner's allegation that PNC "failed to acquire or consider several records that were essential for determining [her] current condition" misconstrues the relative burden of a claimant versus that of a claim administrator under the Plan. (Pl.'s Br. at 5). Under the Plan, it is the claimant's responsibility to complete and provide the paperwork supporting her claim for LTD benefits.[8] (AR 1359). Furthermore, a review of the Administrative Record reveals that Dr.

---

[8]     In addition, if the Court were to assess whether or not the decision to deny LTD benefits constitutes an abuse of discretion—which it is premature at this stage in the litigation to conclude—it would be Ms. O'Conner's

Thomas Liebermann, a physician Board Certified in Gastroenterology and Internal Medicine,

undertook an independent review of Ms. O'Conner's medical records, including those from

"Hillmont GI P.C., dated *6/24/04 through 4/21/15*." (AR 1303) (emphasis added). [9] Dr.

Liebermann's analysis considered the following information:

> On 6/24/2004 she underwent her first colonoscopy which revealed a friable mucosa of the right colon and sigmoid colon. Biopsies revealed evidence of inflammation and a granuloma was reported to be present.

> On 12/20/2008 she had her second colonoscopy. Inflammation of the transverse colon was reported and biopsies revealed mild cryptitis. She was started on Lialda.

> ON [sic] 8/25/2011 she underwent her third colonoscopy. Two polyps were removed and some inflammation of the proximal transverse colon was reported. Biopsies were entirely normal.

> On 2/7/2012 she reported some rectal bleeding and fecal incontinence.

> On 7/15/2014 her fourth colonoscopy is reported to show mucosal scarring of the hepatic flexure. Biopsies were negative for inflammation.

> Her gastrointestinal related medications have included Lialda and Bentyl.

> The claimant has been felt to have irritable bowel syndrome.

(AR 1301-02). Accordingly, Defendant's independent review of Ms. O'Conner's

gastrointestinal health included more of her medical history than the results of just one

colonoscopy.

      Finally, Ms. O'Conner alleges that Defendant provided an "unreasonably short period"

for her treating physicians to respond to the independent medical reviewers. However, Ms.

---

burden, *not* Defendant's, "to produce evidence such that a reasonable jury could find that [Defendant] did not have a reasonable basis for its finding that [she] had not proved she was totally disabled." Cimino v. Reliance Std. Ins. Co., No.00-2088, 2001 WL 253791, at *6 (Mar. 12, 2001).

O'Conner offers no legal support for her contention.  Furthermore, the Court finds that this conclusory allegation, while not providing a good faith basis for extra-record discovery, is best considered in a determination of whether or not Defendant's denial of LTD benefits constitutes an abuse of discretion.

As Ms. O'Conner has failed to provide a good faith basis for this Court to permit her to engage in limited discovery as to alleged procedural conflicts in the denial of her claim for LTD benefits, her request for relief is denied.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Ms. O'Conner's motion to remand and for limited discovery.

An appropriate Order follows.

O:\CIVIL 15\15-5051 O'conner v PNC Fin. Servs. Grp\Memo re Remand and Discovery v2.docx

18